6 P.3d 1032

2000-NMCA-064

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Anthony TODISCO, Defendant–Appellant.**

**No. 20,507.**

Court of Appeals of New Mexico.

May 30, 2000.

Certiorari Granted, No. 26,397, July 31, 2000.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for Appellee.

John D. Cline, Eric J. Knapp, Freedman, Boyd, Daniels, Hollander, Goldberg & Cline, P.A., Albuquerque, for Appellant.

## OPINION

BOSSON, Judge.

{1} Anthony Todisco (Defendant) appeals the Amended Judgment, Partially Suspended Sentence and Commitment Upon Remand entered by the district court after this Court's remand for re-analysis of NMSA 1978, Section 32A–2–20(B) and (C) (1995, prior to 1996 amendment) and a determination of whether Defendant is amenable to treatment and rehabilitation as a child in available facilities. On appeal, Defendant contends that the district court's delay in conducting an amenability hearing on remand violated (1) his right to a speedy sentencing under the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution, (2) his due process rights, and (3) the six-month rule. Defendant also contends that the district court abused its discretion in determining on remand that he is not amenable to treatment and rehabilitation as a child in available facilities. We affirm.

## BACKGROUND

{2} This is Defendant's second appeal in this case. In 1994, Defendant was charged with over twenty offenses arising from the burglaries of three residences, a stolen vehicle and a high-speed police chase. At the time of the alleged offenses, Defendant was fifteen years old. The State sought to have Defendant sentenced as an adult pursuant to Section 32A–2–20(A). In October 1994, Defendant pleaded guilty to two counts of aggravated burglary and one count of residential burglary and no contest to one count of aggravated assault on a police officer.

{3} Following a dispositional hearing in July 1995, the district court determined that Defendant was not amenable to treatment and rehabilitation as a child in available facilities, finding each of the factors under Section 32A–2–20(C) against Defendant. Consequently, Defendant was sentenced as an adult to twenty-four years in the custody of the Corrections Department of the State of New Mexico, with one-third of the sentence suspended, for an actual sentence of approximately fifteen and one-half years. Defendant has been incarcerated as an adult ever since.

{4} Defendant appealed the Judgment, Partially Suspended Sentence and Commitment Upon Remand to this Court, asserting that (1) his pleas were involuntary and (2) the district court erred in its amenability determination. On March 4, 1997, we issued a decision affirming on the plea issue, but reversing on the amenability issue. With respect to amenability, we found substantial

evidence to support the court's findings regarding each of the factors under Section 32A–2–20(C), except one: "whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted[.]" Section 32A–2–20(C)(3). As to this factor, we held that the court erred in treating the aggravated and residential burglaries as crimes against persons rather than against property. Therefore, we reversed the court's amenability determination and remanded for the court to re-weigh the amenability factors "consistently with this decision, based upon the existing record."

{5} Defendant obtained a writ of certiorari from the New Mexico Supreme Court, but after full briefing by the parties, the Court quashed the writ. This Court then issued its mandate to the district court on January 20, 1998. However, because of a change in counsel for Defendant and the grant of a continuance at the parties' request, the district court did not begin its amenability hearing on remand until June 12, 1998.

{6} At the hearing on June 12, 1998, the district court heard argument from counsel regarding the amenability factors under Section 32A–2–20(C), and proceeded to reaffirm its findings from July 1995 with respect to factors (1), (2), (4), and (5), but found factor (3) in favor of Defendant. The district court then turned to the sixth amenability factor: "the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities *currently available.*" Section 32A–2–20(C)(6) (emphasis added). Defendant argued that, in evaluating this factor, the court should consider the availability of Camino Nuevo, a new maximum-security juvenile facility that had opened in Albuquerque in April 1998. Defendant argued that although Camino Nuevo was not available at the time of the initial amenability hearing in 1995, the facility had become available for purposes of Section 32A–2–20(B) and (C)(6) at the time of remand, and therefore it should be considered by the court in re-weighing the amenability factors. The State argued that the new facility should not be considered based on this

Court's mandate that the amenability factors were to be re-weighed "based upon the existing record."

{7} On Defendant's motion, the district court granted a continuance of the amenability hearing so that Defendant could apply to this Court for clarification of its mandate. On July 24, 1998, we entered an order denying the application for clarification but stating that "[t]he district court may consider all available facilities in its discretion."

{8} The district court did not resume the amenability hearing until April 30, 1999, more than nine months after this Court disposed of the application for clarification. On March 17, 1999, Defendant filed a motion to dismiss on the ground that the delay in concluding the amenability hearing violated his right to a speedy sentencing. Defendant argued that because he was approaching the age of twenty-one, the delay in re-sentencing him diminished his opportunity for treatment in a juvenile facility and that this "lost chance" caused him grave prejudice. Following a hearing, the court denied the motion to dismiss, finding that "the delay in this matter is not as egregious as delays in other cases[,]" that "much of the delay is attributed to [Defendant,]" and that the prejudice argued by Defendant was conjectural.

{9} Resuming the amenability hearing on April 30, 1999, the district court reaffirmed its June 1998 findings regarding factors (1) through (5). With respect to factor (6), the district court determined, as it had in 1995, that Defendant was not reasonably likely to be rehabilitated because of the limited time he could be held in a juvenile facility due to his age. At the time of the April 1999 hearing, Defendant was twenty years old and had only four months until he turned twenty-one. Therefore, based on all the factors, with the exception of factor (3), the district court determined, once again, that Defendant was not amenable to treatment or rehabilitation as a child in available facilities and should be sentenced as an adult. Defendant was resentenced to twenty-two and one-half years, with one-third of the sentence suspended, for an actual sentence of approximately fifteen years with credit for time served.

## DISCUSSION
### Waiver

■ {10} Before turning to the merits of Defendant's claims on appeal, we first consider the State's argument that Defendant waived his constitutional right to speedy sentencing. Specifically, the State argues that Defendant waived his right to speedy sentencing by pleading guilty to two counts of aggravated burglary and one count of residential burglary and no contest to one count of aggravated assault on a police officer. The State also contends Defendant waived his right to speedy sentencing by entry of the district court's order on June 18, 1998, which granted a continuance of the amenability hearing at Defendant's request and expressly noted that Defendant "waived any speedy trial issues" pending his application to this Court for clarification of its mandate following the first appeal.

■ {11} Defendant asserts, and our review of the record confirms, that the State never argued waiver below. Generally, an appellee has no duty to preserve issues for review and may advance any ground for affirmance on appeal. *See Bruch v. CNA Ins. Co.,* 117 N.M. 211, 212, 870 P.2d 749, 750 (1994). Defendant argues, however, that even as an appellee, the State may not raise fact-based issues for the first time on appeal because Defendant must be alerted to the issue and given the opportunity to present evidence on the factual issue at the district court level. *See State v. Leyba,* 1997–NMCA–023, ¶ 6, 123 N.M. 159, 935 P.2d 1171; *State v. Porras–Fuerte,* 119 N.M. 180, 183, 889 P.2d 215, 218 (Ct.App.1994); *see also State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994) (reviewing court will not affirm on fact-dependent ground not raised below because it would be unfair to the defendant who lacked opportunity to present evidence relating to the fact below).

■ {12} Although the existence of waiver is generally a question of fact for the district court to determine, *see State v. Bishop,* 108 N.M. 105, 109, 766 P.2d 1339, 1343 (Ct.App.1988), in this case, the State's waiver arguments are based solely on Defendant's pleas of guilty and no contest and the language contained in the court's order of June 18, 1998. When "the evidence as to waiver is a written instrument, its construction and interpretation may be decided as a question of law." *Id.* Because a determination of the waiver issues raised by the State does not depend on facts not presented below, but rests on the interpretation of written instruments and the law, we address the State's arguments raised for the first time on appeal as a matter of law.

### Defendant's Pleas of Guilty and No Contest

■ {13} Although Defendant may have waived objections to defects in the proceedings that occurred up to the point of the guilty and no contest pleas, including any right to a speedy trial, he did not waive his objections to *subsequent* defects in the proceedings. *See State v. Hodge,* 118 N.M. 410, 414, 882 P.2d 1, 5 (1994) (holding voluntary plea of guilty or no contest "waives objections to *prior defects* in the proceedings and also operates as a waiver of statutory or constitutional rights" (emphasis added)); *see also Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (stating when the defendant makes a voluntary plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior to* the entry of the guilty plea" (emphasis added)). Defendant's speedy sentencing claim relates to the alleged deprivation of a constitutional right that occurred *after* the entry of the pleas of guilty and no contest. The State cites no authority for the proposition that the entry of the pleas also waived objections to ensuing defects in the proceedings. *See State v. Chandler,* 119 N.M. 727, 733, 895 P.2d 249, 255 (Ct.App.1995) (stating this Court will not consider a proposition unsupported by citation to legal authority).

{14} Moreover, we note that this case is distinguishable from *State v. Michael S.,* 1998–NMCA–041, ¶ 11, 124 N.M. 732, 955 P.2d 201, and *State v. Timothy T.,* 1998–NMCA–053, ¶ 2, 125 N.M. 96, 957 P.2d 525, in which respondents agreed in the plea and disposition agreements to adult sentences and expressly waived "any motions, defenses,

objections, or requests, either made or that could thereafter be made." In those cases, we held that respondents waived the twenty-day time limit applicable to dispositional hearings. *See Michael S.*, 124 N.M. 732, 955 P.2d 201, 1998–NMCA–041, ¶ 11; *Timothy T.*, 125 N.M. 96, 957 P.2d 525, 1998–NMCA–053, ¶ 4. In this case, Defendant did not agree to be sentenced as an adult, did not waive his right to a dispositional hearing under Section 32A–2–20(B), and therefore he did not waive his objections to defects occurring during the dispositional phase of the proceedings. Therefore, we reject, as a matter of law, the State's first waiver argument.

### District Court's Order of Continuance

{15} The State also argues Defendant waived the right to speedy sentencing by requesting a continuance of the amenability hearing to seek clarification of this Court's mandate following the first appeal. The district court's order granting the continuance provided, in part: "The child has waived any speedy trial issues that may arise from the continuance of this amenability hearing pending application to the Court of Appeals for clarification of its mandate." The State argues that the court's order of continuance should be read as a complete waiver of Defendant's right to speedy sentencing. Defendant contends that the order of continuance operated as a waiver only for the period of time the application for clarification was pending in this Court. We agree with Defendant. We read the order of continuance as a limited waiver of Defendant's speedy sentencing right for the five-week period from June 18, 1998, when the continuance was granted, to July 24, 1998, when this Court issued its order disposing of the application for clarification. *Cf. Bishop*, 108 N.M. at 109, 766 P.2d at 1343 (construing defendant's motion and district court's order of continuance as limited waiver of six-month rule). Therefore, we also reject, as a matter of law, the State's argument that the order granting the continuance constituted an absolute waiver of Defendant's right to speedy sentencing. We focus, therefore, on the nine-month delay that occurred after the decision and remand from this Court on July 24, 1998.

### Right to Speedy Sentencing

{16} Defendant argues that the nine-month delay in concluding his amenability hearing violated his right to speedy sentencing under the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution. Defendant's argument presumes that the constitutional right to a speedy trial also applies to sentencing proceedings. The United States Supreme Court has assumed, without deciding, that the Sixth Amendment speedy trial right applies to sentencing. *See Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). Since *Pollard*, all federal circuit courts of appeal, including the Tenth Circuit, "which have addressed the issue have either treated the subject as established law or have perpetuated the Court's assumption in *Pollard.*" *Perez v. Sullivan*, 793 F.2d 249, 253 (10th Cir.1986); *see United States v. Martinez*, 837 F.2d 861, 866 (9th Cir.1988); *United States v. Campisi*, 583 F.2d 692, 694 (3d. Cir.1978); *United States v. Reese*, 568 F.2d 1246, 1253 (6th Cir.1977); *United States v. Campbell*, 531 F.2d 1333, 1335 (5th Cir.1976); *United States v. Tortorello*, 391 F.2d 587, 589 (2d Cir.1968).

{17} Similarly, as Defendant notes in his brief in chief, many state courts also have assumed or expressly held that sentencing is part of the trial for purposes of speedy trial protection under the Sixth Amendment. *See, e.g., Hurst v. State*, 516 So.2d 904, 905 (Ala. Crim.App.1987); *Gonzales v. State*, 582 P.2d 630, 633 (Alaska 1978); *State v. Burkett*, 179 Ariz. 109, 876 P.2d 1144, 1149 (App.1993); *Moody v. Corsentino*, 843 P.2d 1355, 1363 (Colo.1993) (en banc); *State v. Wall*, 40 Conn.App. 643, 673 A.2d 530, 540 (1996); *Moore v. State*, 263 Ga. 586, 436 S.E.2d 201, 202 (1993); *State ex rel. McLellan v. Cavanaugh*, 127 N.H. 33, 498 A.2d 735, 740 (1985); *State v. Avery*, 95 N.C.App. 572, 383 S.E.2d 224, 225 (1989); *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597, 599 (1980); *State v. Banks*, 720 P.2d 1380, 1385 (Utah 1986); *State v. Dean*, 148 Vt. 510, 536 A.2d 909, 912 (1987); *State v. Ellis*, 76 Wash.App. 391, 884 P.2d 1360, 1362 (1994); *State v. Allen*, 179 Wis.2d 67, 505 N.W.2d 801, 803 (1993).

{18} New Mexico courts have not previously addressed whether the speedy trial right extends to the sentencing phase of a criminal prosecution. We need not decide that issue in this appeal. We assume, without deciding, that the speedy trial right does apply to sentencing proceedings, and for the reasons that follow, we hold that Defendant's rights were not violated in this instance.

{19} Courts that recognize or assume that the speedy trial guarantee extends to sentencing apply the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether a defendant's constitutional right to speedy sentencing has been violated. *See Perez*, 793 F.2d at 254. The *Barker* test requires us to balance (1) the length of delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *accord State v. Manzanares*, 121 N.M. 798, 800, 918 P.2d 714, 716 (1996). "In considering each of the four factors, we are deferential to the trial court's fact finding but independently examine the record to determine whether Defendant's constitutional right to a speedy trial was violated." *State v. Tortolito*, 1997–NMCA–128, ¶ 6, 124 N.M. 368, 950 P.2d 811.

{20} This case involves a delay of approximately nine months and six days from July 24, 1998, when this Court disposed of his application for clarification, to April 30, 1999, when the district court resumed the amenability hearing. Assuming, without deciding, that the first three *Barker* factors—the length of the delay, the reasons for the delay and the assertion of the right—weigh in Defendant's favor, we nonetheless conclude that his right to speedy sentencing was not violated because of the absence of evidence in the record to establish prejudice caused by the delay. *See Perez*, 793 F.2d at 256 (noting that necessity of showing substantial prejudice dominates the four-part balancing test in speedy sentencing case).

{21} We further note that even assuming the first three factors weigh in Defendant's favor, the first two factors—the length of the delay and the reasons for the delay—weigh only slightly in his favor. Here, the delay complained of by Defendant was nine months and six days, only slightly longer than the minimum period needed to establish a presumption of prejudice and to trigger further inquiry under *Barker* in a simple case. *See State v. Coffin*, 1999–NMSC–038, ¶ 59, 128 N.M. 192, 991 P.2d 477 (stating in evaluating length of delay, we consider the extent to which the delay extends beyond the bare minimum needed to trigger further judicial inquiry under *Barker*), *Salandre v. State*, 111 N.M. 422, 428 & n. 3, 806 P.2d 562, 568 & n. 3 (1991) (same).

{22} Moreover, the stated reasons for the delay, including the district court's "fairly busy" docket, "the traditional holiday season" and a death in the family of the district judge, are all neutral reasons which do not weigh heavily against the State. *See Tortolito*, 124 N.M. 368, 950 P.2d 811, 1997–NMCA–128, ¶ 9 (noting that neutral reasons, such as negligence or excessive caseload, should weigh less heavily but should nonetheless be weighed against the State since it bears the ultimate responsibility to complete the trial process). We also discern no evidence in the record that the delay in this case was the result of a deliberate attempt by the State to gain a tactical advantage or harass Defendant. *See Perez*, 793 F.2d at 255; *see also Pollard*, 352 U.S. at 361, 77 S.Ct. 481 (holding delay in sentencing "must not be purposeful or oppressive"); *State v. Kilpatrick*, 104 N.M. 441, 445, 722 P.2d 692, 696 (Ct.App.1986) ("[A] deliberate attempt to delay should be weighed heavily against the prosecution.").

{23} We perceive the pivotal factor in this case to be the lack of evidence in the record to support a finding that Defendant was prejudiced by the delay. Traditionally, the right to a speedy trial protects against three types of prejudice: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility of impairment to the defense. *See Barker*, 407 U.S. at 532, 92 S.Ct. 2182. However, as the Tenth Circuit explained in *Perez*, in a post-conviction situation, "a delay in sentencing involves considerations different from those related to pre-trial delay. The altera-

tion of defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process." *Id.* 793 F.2d at 254. Most of the interests designed to be protected by the speedy trial guarantee "diminish or disappear altogether once there has been a conviction," and "the rights of society proportionately increase[.]" *Id.* at 256. Therefore, "the prejudice claimed by the defendant must be substantial and demonstrable." *Id.;* see also *Allen,* 505 N.W.2d at 805 (concluding that absence of prejudice outweighs other factors in speedy sentencing case). In this case, Defendant has not demonstrated actual and substantial prejudice.

{24} Defendant argues that the district court's failure to conclude the amenability hearing within a reasonable time, despite repeated, written requests from defense counsel to do so, deprived him of the opportunity to be treated in an existing juvenile facility, such as Camino Nuevo. This "lost chance," he claims, prejudiced him. We hold that Defendant's claim of prejudice is speculative because there is insufficient evidence in the record to conclude that the delay materially affected the court's determination of non-amenability.

{25} At the amenability hearing on April 30, 1999, Judith Hebrlee, Deputy Superintendent of Camino Nuevo, testified that Camino Nuevo is a maximum-security facility for male juveniles that opened in Albuquerque on April 21, 1998. She testified that, in comparison to the New Mexico Boys' School in Springer, Camino Nuevo has a higher level of security and is the equivalent of any maximum-security adult prison. She described the various rehabilitative programs and social services offered at the facility, as well as its intake process. On cross-examination, she testified that youthful offenders cannot be held in the facility past the age of twenty-one. This prompted the district court to state that Defendant would be twenty-one years old in August 1999 and to ask the witness what sort of rehabilitation could be provided to Defendant in the four months before he turned twenty-one. Ms. Hebrlee responded that little could be done for De-

fendant in that limited time. When asked whether more could have been done for Defendant if he had been committed to Camino Nuevo when it first opened on April 21, 1998, Ms. Hebrlee testified that, with more time, more could have been done for Defendant. In concluding that Defendant was not amenable to treatment or rehabilitation as a child, the court noted, among other things, that Defendant was now almost an adult and rehabilitation was not likely given the short time available to him in a juvenile facility. Defendant offers the above testimony and comments of the district court as the *only* reason Defendant was determined not amenable to treatment or rehabilitation as a child, and therefore proof of prejudice to him as a direct result of the delay. The record, however, does not confirm Defendant's position.

{26} The State points out, and our review of the record confirms, that the district court did not base its decision of non-amenability solely on the limited time that would be available to Defendant in a juvenile facility. "[T]he prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available," § 32A–2–20(C)(6), was only one of six statutory factors considered by the district court in determining that Defendant was not amenable to treatment or rehabilitation as a child. Indeed, the court found that four other factors also weighed against amenability, including the seriousness of the offenses, *see* § 32A–2–20(C)(1), the aggressive and violent manner in which the offenses were committed, *see* § 32A–2–20(C)(2), the sophistication and maturity of Defendant, *see* § 32A–2–20(C)(4), and the previous history of Defendant, *see* § 32A–2–20(C)(5). Obviously, these factors were not affected by any delay in sentencing; they remained in 1999 as they had been in 1995. Therefore, based on all the statutory factors, with the exception of Subsection (3), the court determined, once again, that Defendant was not amenable to treatment or rehabilitation as a child in available facilities.

{27} Moreover, viewing the testimony and the comments of the district court at the

April 30, 1999, hearing in their full and proper context, we find no indication in the record that the court's amenability determination would have been any different even if the remand hearing had been held soon after July 24, 1998, or for that matter even on April 21, 1998, when Camino Nuevo first opened. The district court determined in 1999 that Defendant was not likely to be rehabilitated at Camino Nuevo for the same reasons it concluded in 1995 that he was not likely to be rehabilitated at the New Mexico Boys' School. The court explained that because of the seriousness of the offenses, the violent manner in which the offenses were committed, the sophistication and maturity of Defendant, and his juvenile history, the twin objectives of adequate protection of the public and reasonable rehabilitation of Defendant could only be achieved, in the court's judgment, by a long-term incarceration. And a long-term incarceration could not be achieved by commitment to a juvenile facility—whether in 1995 or 1999. The court also observed that the rehabilitative programs (as opposed to the security) offered at Camino Nuevo were essentially the same as the programs offered at the New Mexico Boys' School; that is, they were the same programs that the court had already determined to be insufficient.

{28} Although the court acknowledged the greater security at Camino Nuevo and did not believe Defendant would escape from the facility before his release at the age of twenty-one, the district still concluded that reasonable rehabilitation was not likely because Defendant would not be held in the facility long enough to benefit from its programs and services. In short, the court found Defendant not amenable to treatment or rehabilitation as a child because it determined that the same unfavorable circumstances that existed in July 1995 continued unchanged in April 1999.

{29} Because the court relied in part on its 1995 findings in determining that Defendant was not amenable to treatment as a child, Defendant cannot attribute the court's decision against him to the nine-month delay from July 24, 1998, to April 30, 1999. Therefore, even assuming the first three *Barker*

factors weigh in Defendant's favor, we conclude that the evidence in the record does not support a finding of prejudice caused by the delay. Rather, the evidence suggests that the court would have made the same amenability determination even without the delay in question. A finding of prejudice under *Barker* requires evidence showing a nexus between the undue delay and the prejudice claimed. Such nexus is not apparent in this instance. *See Salandre*, 111 N.M. at 431, 806 P.2d at 571; *see also United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (stating that the possibility of prejudice is not sufficient to support claim that speedy trial right was violated); *Coffin*, 128 N.M. 192, 991 P.2d 477, 1999–NMSC–038, ¶ 71 (concluding that State met its burden of showing defense was unimpaired given the speculative nature of witness' availability at original trial date).

**Due Process**

{30} Defendant also argues that the delay in concluding the amenability hearing on remand violated his due process rights. "To prevail on a claim that delay in the proceedings violated Defendant's right to due process, Defendant must prove prejudice and an intentional delay by the State to gain a tactical advantage." *State v. Gibson*, 113 N.M. 547, 559, 828 P.2d 980, 992 (Ct.App. 1992). The prejudice shown must be "actual" and "substantial." *Id.* For the same reasons just discussed, the record does not demonstrate any of these features.

**Rule 5–604**

{31} Defendant argues that the delay in this case also violates the six-month rule, Rule 5–604(B) NMRA 2000. *See Michael S.*, 124 N.M. 732, 955 P.2d 201, 1998–NMCA–041, ¶ 9 (holding six-month rule applies to youthful offender proceedings); Rule 10–101(A)(2) NMRA 2000 (holding rules of criminal procedure for the trial courts govern the procedure in all youthful offender proceedings). Rule 5–604(B)(4), which Defendant claims to be the relevant provision, provides, in part,

[t]he trial of a criminal case, or an habitual criminal proceeding shall be commenced

six (6) months after whichever of the following events occurs latest:

. . .

(4) in the event of an appeal, including interlocutory appeals, the date the mandate or order is filed in the district court disposing of the appeal.

{32} By its express terms, Rule 5–604(B) applies only to trials and habitual criminal proceedings. However, relying on *Michael S.*, 124 N.M. 732, 955 P.2d 201, 1998–NMCA–041, ¶ 8, Defendant argues that the six-month rule should "not be read absolutely literally" and is not intended to " 'cover every eventuality,' " *id.* (quoting *State v. Doe*, 99 N.M. 460, 463, 659 P.2d 912, 915 (Ct.App.1983)), and therefore the rule should be read as applying to sentencing hearings to further the important purpose served by time limits on children's court proceedings.

{33} Defendant's reliance on *Michael S.* is misplaced. *Michael S.* involved an unusual situation in which, if Rule 5–604(B) were to be read literally, no time limit would apply to the trial of youthful offenders under the Children's Code due to a gap created by a series of amendments in the Children's Code and the Children's Court's Rules and a delay or an oversight in not amending the Rules of Criminal Procedure to conform to those changes. This Court noted that "it would be absurd for us to hold that no time limit applies due to the fact that there is literally no rule that expressly covers the situation." *Michael S.*, 124 N.M. 732, 955 P.2d 201, 1998–NMCA–041, ¶ 7.

{34} In this case, however, a literal interpretation of Rule 5–604(B) would not lead to such an absurdity because, in fact, there is a rule of criminal procedure that expressly covers time limits for sentencing hearings. On December 1, 1998, the New Mexico Supreme Court promulgated Rule 5–701(B) NMRA 2000 which provides, "Except for good cause shown, the sentencing hearing shall begin within ninety (90) days from the date the trial was concluded or the date a plea was entered." The existence of a separate rule that establishes time limits for sentencing suggests that Rule 5–604(B) was not intended to apply to sentencing but was intended to apply only to trials and habitual criminal

proceedings, as the plain meaning of the rule suggests. *See State v. Michael S.*, 120 N.M. 617, 618, 904 P.2d 595, 596 (Ct.App.1995) (reviewing court ordinarily should give effect to plain language of statute or rule); *State v. Eden*, 108 N.M. 737, 741, 779 P.2d 114, 118 (Ct.App.1989) (reading Rule 5–604(B) according to its plain meaning).

{35} Therefore, we conclude that Rule 5–604(B) is inapplicable to the amenability hearing on remand. Moreover, because Defendant did not assert below, and does not argue on appeal, a violation of Rule 5–701(B), we do not consider the issue on appeal. *See* Rule 12–216(A) NMRA 2000; *State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986).

**The Court Did Not Abuse Its Discretion On Remand**

{36} Finally, Defendant argues that the district court abused its discretion in finding that Defendant "is not amenable to treatment or rehabilitation as a child in available facilities," *see* § 32A–2–20(B)(1), and that he is not likely to be rehabilitated in "facilities currently available." *See* § 32A–2–20(C)(6). Whether Defendant is amenable to treatment or rehabilitation as a child is a determination "ultimately left to the discretion of the district court." *State v. Sosa*, 1997–NMSC–032, ¶ 9, 123 N.M. 564, 943 P.2d 1017; *see* § 32A–2–20(A). On appeal, we do not disturb the lower court's decision unless it "is clearly against the logic and effect of the facts and circumstances of the case." *Sosa*, 123 N.M. 564, 943 P.2d 1017, 1997–NMSC–032, ¶ 7 (internal quotation marks and citation omitted).

{37} In determining that Defendant is not amenable to treatment or rehabilitation as a child in available facilities, the court reaffirmed its previous findings regarding factors (1), (2), (4), (5), and (6) of Section 32A–2–20(C), and found only factor (3) in favor of Defendant. In Defendant's first appeal, we concluded that the court did not abuse its discretion in its findings regarding factors (1), (2), (4), (5), and (6). We are bound by that prior decision of this Court. We found substantial evidence to support those findings and held

that the court erred only in finding that the offenses in question were committed against persons rather than against property. For the same reasons we concluded that the court did not abuse its discretion in the first appeal, we hold that the district court did not abuse its discretion on remand.

## CONCLUSION

{38} Assuming, without deciding, that the constitutional right to a speedy trial applies to sentencing proceedings, we conclude that Defendant's right to speedy sentencing was not violated in this case. We also conclude that Defendant was not denied due process, that Rule 5–604(B) is inapplicable to the amenability hearing on remand, and that the district court did not abuse its discretion in determining on remand that Defendant is not amenable to treatment or rehabilitation as a child in available facilities. Therefore, we affirm the Amended Judgment, Partially Suspended Sentence and Commitment Upon Remand of the district court.

{39} **IT IS SO ORDERED.**

ARMIJO, and KENNEDY, JJ., concur.