**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**TALOFA SEUMANU, Defendant.**

High Court of American Samoa
Trial Division

CR No. 08-03

June 1, 2005

Before RICHMOND, Associate Justice; MAMEA, Associate Judge; and TAPOPO, Associate Judge.

Counsel: For Plaintiff, Julie Sione
 For Defendant, Tautai A.F. Fa`alevao

ORDER DENYING MOTION TO WITHDRAW GUILTY PLEA

### Background

On February 2, 2003, Defendant Talofa Seumanu ("Seumanu") was charged with murder in the first degree, felonious restraint, tampering with physical evidence and property damage in the first degree. Seumanu was one of several defendants whom Plaintiff American Samoa Government ("ASG") charged with homicide and other crimes in connection with the death of Wyatt Bowles, Jr.

On January 7, 2004, Seumanu entered a plea of guilty second-degree murder. The plea agreement provided that if Seumanu admitted guilt to

149

second degree murder and agreed to testify truthfully and completely against Richard Majhor ("Majhor"), Seumanu's co-defendant, and to cooperate fully in Majhor's investigation, ASG would amend the homicide charge and drop the remaining charges. The plea agreement also provided that if Seumanu satisfactorily completed his end of the agreement, ASG would recommend to the Court a sentence of 20 years imprisonment.

On February 25, 2005, Seumanu moved to withdraw his guilty plea. In that motion, he asserts that at the time of the plea hearing, he did not understand the nature of the terms of his guilty plea and therefore should be allowed to withdraw that plea. Seumanu also refers to his right to speedy sentencing. As of the date of the filing of the motion, Seumanu had yet to be sentenced. This was a result of the fact that Majhor has not yet gone to trial, and therefore Seumanu has been unable to testify in that trial as provided in the plea agreement. Seumanu nonetheless contends that the delay of almost 14 months[1] in sentencing him is unreasonable and in violation of his constitutional rights.

**Analysis**

### I. Withdrawal of the Guilty Plea

Seumanu asserts that at the time of the plea hearing, he did not understand the nature of the terms of his guilty plea and therefore should be allowed to withdraw that plea. T.C.R.Cr.P. 32(d) authorizes a motion to withdraw a guilty plea, stating that "[a] motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended."

The thrust of Seumanu's argument focuses upon the provision in the plea agreement which states that ASG will recommend to the Court that he be sentenced to 20 years in prison. Seumanu asserts that, at the time of the hearing, he did not fully understand, and that the Court did not fully inform him, that the provision is simply a recommendation and that the Court has discretion to disregard it if it sees fit.[2]

---

[1] The plea agreement was approved on January 7, 2004. The current motion was filed on February 25, 2005. Therefore, slightly less than 14 months has passed between the date of the present motion and the date on which the plea agreement was finalized.

[2] Seumanu argues that the Court has somehow violated T.C.R.Cr.P. 11(e)(3). However, Rule 11(e)(3) has no relevance to the issue at hand. The rule states that if a plea agreement provides for a certain "disposition," the court must inform the defendant that it will "embody" that disposition in the "judgment and sentence." However, in the

However, a reading of the transcript of the plea hearing paints a wholly opposite picture. On two separate occasions, the Court questioned Seumanu about the recommendation provision in the agreement, and on both occasions he stated that he understood the provision:

> THE COURT: The seventh paragraph of the plea agreement states that the Attorney General agrees to recommend the sentence of twenty years imprisonment, and you individually and by your attorney agree with such recommendation?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: That's your understanding of that portion of the plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: We'll deal with this a little more lately [sic], but it ends up saying that you acknowledge and understand that the court is not bound by any recommendation or agreement of the parties.
> You understand that?
>
> THE DEFENDANT: Yes, Your Honor.

(Jan. 7, 2004 Transcript, pg. 9-10).

> THE COURT: The plea agreement indicates the government is going to recommend a sentence of twenty years. Your attorney is going to make recommendations as well. I want you to understand, as the plea agreement states, those recommendations are not binding on the court. In other words, the court has discretion to determine what's the appropriate sentence in this matter. And the court may or may not accept the recommendations made by counsel for either party, it makes its own decision as to what the appropriate decision or

---

Advisory Committee Notes to the identical federal rule, the Committee clearly stated that when a plea agreement simply contains a recommended sentence, the plea agreement does not contain a "disposition," and therefore the rule does not apply. *See United States v. Henderson,* 565 F.2d 1119, 1122 (9th Cir. 1977). The present plea agreement contains a recommended sentence, expressly made non-binding on the court, and we therefore hold that Rule 11(e)(3) does not apply.

151

sentence should be, and you will not have the right to withdraw your plea at that time.
Is this understood?

THE DEFENDANT: I understand.

(Jan. 7, 2004 Transcript, pp. 12-13).

■ After a review of the entire transcript, including the above portions, we find that Seumanu understood the nature of the recommendation provision in the plea agreement, and that the Court adequately explained that provision to him. Nonetheless, we will fully analyze the law regarding Seumanu's motion to withdraw his guilty plea:

> Defendant has the burden of establishing that there is a fair and just reason for allowing withdrawal of his guilty plea, and in determining whether Defendant has met this burden, we consider the following factors: (1) whether the defendant has asserted his innocence; (2) prejudice to the government; (3) delay in filing defendant's motion; (4) inconvenience to the court; (5) defendant's assistance of counsel; (6) whether the plea is knowing and voluntary; and (7) waste of judicial resources.

*United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993). *See also United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984).

■ The first element asks whether the defendant has asserted his innocence. Nowhere in Seumanu's motion does he either impliedly or explicitly assert his innocence.[3] Thus, this element weighs against allowing Seumanu to withdraw his plea.

■ The second element asks the Court to examine the prejudice to the government in the event that we grant the motion to withdraw the plea. ASG would suffer substantial prejudice should this motion be granted. Presumably, ASG's central motivation in seeking the plea with Seumanu was to gain his cooperation and testimony in the Majhor prosecution. And, now nearly 14 months later, it is likewise presumed that ASG has been proceeding in the Majhor investigation and trial preparation under the assumption that they would have access to Seumanu and his testimony for that trial. Should we now allow Seumanu to withdraw his

---

[3] Seumanu's written motion implicitly still admits that he was a perpetrator of the homicide. Motion to Withdraw Plea Made at Plea Agreement, ¶ 3.

plea, and evade his duty to assist in the Majhor trial, ASG could very well be set back significantly in the prosecution of Majhor. Granting Seumanu's motion would seriously prejudice ASG.

■ The third element asks whether the defendant delayed in filing the withdraw motion. The longer a defendant waits before filing such a motion, "the more substantial the reasons he must proffer in support of his motion." *Carr*, 740 F.2d at 344. "Conversely, a prompt withdrawal may indicate that a plea was unknowingly entered in haste." *Id.* The 14 month delay in filing the present motion is long enough to rule out any concerns that the "plea was unknowingly entered in haste." *Id.* The lengthy delay supports to a denial of the motion.

■ The fourth element asks us to consider possible inconvenience to the court. Here, although staging a trial for Seumanu would put an added burden upon our docket, such an inconvenience would not induce us to deny the motion. Therefore, this factor weighs in favor granting Seumanu's motion.

■ The fifth element raises the question of whether the defendant had adequate assistance of counsel when the plea agreement was presented to him. Seumanu has not complained about his counsel's assistance. An examination of the record in the case and the transcript of the hearing likewise do not reveal any evidence that Seumanu's counsel has been inadequate in any way.

■ The sixth element asks us to examine whether the defendant knowingly and voluntarily entered the plea agreement. In this regard, our impressions and conclusions made at the time of the plea agreement hearing, where we thoroughly questioned Seumanu and considered both the content of his responses and his demeanor, are particularly important. At the conclusion of that hearing, we stated that we found "that the defendant's plea of guilty to the amended count, to second degree, is freely and voluntarily, intelligently made with the advice of and counsel of competent attorney." (Jan. 7, 2004 Transcript, p. 17). Seumanu has not offered any compelling evidence to convince us to modify this earlier conclusion. The only argument Seumanu presents is that he did not fully understand the nature of the provision regarding the sentencing recommendation. However, as demonstrated above, the transcript clearly shows that the Court explained this provision to Seumanu and that he indicated that he understood the meaning of it. In sum, we find that the weight of the evidence indicates that Seumanu entered into the plea agreement knowingly and voluntarily, and therefore, this factor weighs against granting Seumanu's motion to withdraw his guilty plea.

The seventh and final element questions whether a withdrawal of the plea would lead to a waste of judicial resources. As explained above, the effect withdraw would have on the Court is somewhat minimal, and therefore does not encourage us to deny Seumanu's motion.

In conclusion, Seumanu's motion to withdraw his guilty plea, based on his spurious claim that he lacked understanding of the consequences of his guilty plea, should be denied. Seumanu simply does not offer any credible reason to grant a withdrawal, especially in light of the fact that he has not retracted his admission of guilt in the commission of the homicide and has waited 14 months to file the motion, and approval of the motion would likely cause substantial prejudice to ASG.

## II. Right to Speedy Sentencing

Seumanu's purpose in raising this issue is somewhat clouded. Ordinarily, the objective would be dismissal of the prosecution based on constitutional speedy trial grounds. However, Seumanu has only linked this argument as somehow providing another basis for granting his motion to withdraw his guilty plea. But, because Seumanu clearly refers to such a constitutional right in his motion, we will fully address the issue. However, in doing so, we assume that he meant to assert the argument as a means of dismissing the case, rather than as a separate ground of withdrawing his guilty plea.

In *Pollard v. United States*, 352 U.S. 354, 361 (1957) the United States Supreme Court found that a defendant's sentencing is "part of the trial for purposes of the Sixth Amendment." Many federal and state courts have taken this language to mean that a right to a speedy trial includes the right to a speedy sentence. *Jolly v. Arkansas*, 189 S.W.3d 40, 44-45 (Ark. 2004) (citing numerous federal and state cases recognizing such a principle). When recognizing that the right to a speedy sentence is included within the right to a speedy trial, most courts have analyzed the issue by applying the *Barker* factors, fashioned by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), to guide right to speedy trial inquiries.

The *Barker* factors include: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant has asserted his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 529-30; *see also Pene v. Am. Samoa Gov't*, 12 A.S.R.2d 43, 45 (App. Div. 1989). It should be noted that the Supreme Court has made it clear that no one factor is controlling, *Barker*, 407 U.S. at 533, and that each case is dependant upon the circumstances. *Id.* at 522.

We also recognize that "a delay in sentencing involves considerations different than those related to pre-trial delay." *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir. 1986). In *Perez*, the court noted that "[t]he alteration of a defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process. Once guilt has been established in the first instance the balance between the interests of the individual and those of society shift proportionately." *Id.*

The first factor is the length of delay. This factor is a threshold inquiry, such that a finding of an unreasonable delay will "trigger the necessity for further inquiry." *Jolly*, 189 S.W.3d at 45. A brief analysis of past cases involving this issue reveals that other courts have rejected speedy sentencing claims with delays far exceeding the 14 months delay in the case at hand. *See e.g., Pollard v. United States*, 352 U.S. 354, 354 (1957) (24 months); *United States v. Tortorello*, 391 F.2d 587, 587 (2nd Cir. 1968) (29 months). In fact, in the cases where courts have found delays to be excessive, the delays have tended to far exceed 14 months. *See e.g., United States v. Campbell*, 531 F.2d 1333 (six year delay); *Juarez-Casares v. U.S.*, 496 F.2d 190 (5th Cir. 1974) (31 months); *United States v. James*, 459 F.2d 443 (5th Cir. 1972) (three year delay); *Brady v. Superintendent, Anne Arundel County Detention Center*, 443 F.2d 1307 (4th Cir. 1971) (eight year delay). As far as sentencing delays go, the delay in Seumanu's sentencing is on the shorter end of the spectrum. However, despite the relative brevity of Seumanu's sentencing delay, we will concede that it is just barely long enough to qualify as unreasonable at first blush for purposes of analyzing the remaining three factors.

■ The second factor asks us to consider the reasons for delay. Here, the reason for delay is simple. For Seumanu to complete the terms of his plea agreement, he must testify truthfully and completely at Majhor's trial. Because Majhor's case will involve a lengthy and complicated murder trial, the Court has given the parties in that case, particularly the defendant, wide latitude in setting back the trial date.

We find this reason for delay to be extremely compelling[4] and therefore weighing heavily against granting Seumanu's motion.

■ The third factor is whether the defendant has asserted his right to speedy sentencing. Here, courts often look at whether during the trial or sentencing process the defendant contributed to the delay, or whether he

---

[4] *Compare Jolly v. Arkansas*, 189 S.W.3d 40 (Ark. 2004), where the delay was caused when the prosecutor simply misplaced and then forgot about the defendant's file.

consistently worked against the delay. *See Jolly*, 189 S.W.3d 40, 45-46. Because Seumanu has not contributed to the delay, the current motion is sufficient to assert his right to speedy sentencing. Thus, we find that this third factor weighs in favor of granting the current motion.

 The fourth and final factor asks us whether the delay has caused the defendant prejudice. Courts have noted that this fourth factor should be analyzed differently in the context of a speedy sentence, relative to a speedy trial situation. *Id.* at 5; *State v. Todisco*, 6 P.3d 1032, 1039-40 (N.M. Ct. App. 2000). This is because the "competing interests of the accused and of society are different than those presented in a pre-trial delay situation." *Jolly*, 189 S.W.3d at 47. "Most of the interests designed to be protected by the speedy trial guarantee 'diminish or disappear altogether once there has been a conviction,' and 'the rights of society proportionately increase.' Therefore, 'the prejudice claimed by the defendant must be substantial and demonstrable.'" *Todisco*, 6 P.3d at 1039-40 (*quoting Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir. 1986) (internal citations omitted).

In Seumanu's motion, it is implied that he is prejudiced by the sentencing delay because the uncertainty about the length of his sentence weighs heavily on his mind. Additionally, it is implied that the delay in sentencing is causing him to be held in a separate area of the Tafuna Correctional Facility ("TCF"), away from the general population.

With regards to Seumanu's argument that the delay causes him stress, we find that it is without merit. Although we will concede that final sentencing may provide a defendant with a certain amount of closure, we are not prepared to find the anxiety caused by a 14 month delay of such closure is so prejudicial as to cause a violation of a defendant's constitutional right to speedy sentencing. To make such a finding, we would need to see something more "substantial and demonstrable" then a mere brief allegation of anxiety, especially in light of the relatively short delay in the case at hand.

As for Seumanu's allegation that the current sentencing delay is causing him to be housed in separate quarters at TCF, we find that it, too, is without merit. There is no evidence to show that the sentencing delay is the cause of Seumanu's special status at TCF. The more likely cause of the separate housing is that Seumanu has been linked with a group of inmates connected with the murder of Wyatt Boyles Jr., while much of the general population at TCF has been incarcerated for convictions of much less grave crimes. Additionally, there is no evidence to support the notion that when Seumanu is sentenced he will be removed from his current housing quarters. Thus, in short, we do not feel that Seumanu's special housing status at TCF has been a prejudicial result of the

156

sentencing delay.

In conclusion, whether for the purpose of justifying withdrawal of Seumanu's guilty plea or dismissal of his prosecution, we hold that Seumanu's right to speedy sentencing has not been violated. The delay he has experienced is relatively short, ASG's reasons for delay are substantial and legitimate, and Seumanu simply has not demonstrated that he has been prejudiced by the postponement of his sentencing.

## Order

Seumanu's motion to withdraw his guilty plea and his implicit motion to dismiss are denied. It is so ordered. ▇▇▇▇▇▇