Benjamin WEAVER *v.* STATE of Arkansas

CR 92-814                           852 S.W.2d 130

Supreme Court of Arkansas
Opinion delivered May 3, 1993

*William R. Simpson, Jr.*, Public defender, by: *Bret Qualls*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. We reverse and dismiss appellant's judgments of conviction because the speedy trial rules were violated. The facts are as follows. A series of armed robberies took place in Little Rock in November 1989. On December 5, 1989, appellant was arrested and subsequently charged in a twenty-one count information with committing eleven of the aggravated robberies and thefts. He has remained incarcerated since that time. At his first appearance in court on February 12, 1990, a little over two months after he was arrested, appellant moved for severance of the charges. The severance was granted that same day, February 12. Thus, both the State and the trial court knew that appellant faced eleven separate trials within the next ten months. The cases could have been set for trial within the next ten months, and, if the appellant thought that was unfair, he could have moved for a continuance. However, no order concerning a delay resulting from other trials was entered. *See* A.R.Cr.P. Rules 28.3(a) and (i).

On April 10, 1990, the public defender's office was appointed to replace appellant's original lawyer. A jury trial was scheduled for June 14, 1990, but on June 8, 1990, appellant appeared and stated that he wished to employ a private attorney. On October 8, 1990, appellant appeared with a new attorney, James Smedley. On October 15, 1990, the State moved to reset the trial because of the unavailability of a witness. On November 8, 1990, appellant was tried on counts fourteen and fifteen, aggravated robbery and theft of property of a Texaco station, and was found not guilty.

On December 10, 1990, after he had been in jail for more than a year, appellant moved to dismiss the remaining counts for lack of a speedy trial. The trial court denied the motion, but did not set out any excluded periods in an order. On April 10, 1991, Bill McArthur was appointed to represent appellant, and another motion to dismiss for lack of a speedy trial is noted on the docket

sheet. The motion was denied, and again no excluded periods were set out in a written order. McArthur represented appellant at the trial on counts five and six, which alleged the aggravated robbery and theft of property from a Roadrunner store, and again a jury found appellant not guilty.

A new attorney, Bennie O'Neil, was appointed to represent appellant on counts twenty and twenty-one, the robbery of a Circle K convenience store, and these counts were set for trial on July 9, 1991. The case was tried, but resulted in a mistrial. On July 15, the public defender's office was again appointed to represent appellant. Three months later, on October 14, 1991, another motion was made to dismiss the remaining counts because of lack of a speedy trial. A hearing was held on the motion, and the State offered the testimony of a deputy court clerk who outlined the proceedings set out above. The trial court orally denied the motion to dismiss and, at the time, stated that the primary reason for the delay was that the court did not wish to make any one lawyer defend appellant on all of the counts of the indictment. For that reason, the court stated that it would appoint one lawyer for one trial, and then later appoint another, and so forth until all counts had been tried. However, again, no excluded periods were set out in a written order. On November 14, 1991, appellant was again tried on counts twenty and twenty-one, and this time the jury found him not guilty.

On April 14, 1992, or 868 days after his arrest, appellant was tried in the case now on appeal, counts three and four, the aggravated robbery of, and theft of property from, another Roadrunner convenience store. This time he was found guilty. In the judgment of conviction appellant was given credit for the 868 days he had been in jail.

Appellant was subsequently acquitted on counts nine and ten, and the State dismissed all of the remaining counts, seven, eight, eleven, and twelve. Appellant appeals and argues that the trial court erred in refusing to dismiss the charges because of violation of the speedy trial rules. The argument is well taken. Rule 28.1 (c) provides that a defendant "shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve (12) months" from the date of arrest, excluding only those periods of delay as authorized by

Rule 28.3. In the argument part of its brief, the State concedes "that all of the possible excludable periods in this record combined would not extend the speedy trial deadline to the date appellant was tried and convicted." In short, the State concedes that the speedy trial rules were violated, but asks us to disregard the rules and adopt the reasoning of the dissenting opinion of Justice Hickman in *Asher* v. *State*, 300 Ark. 57, 776 S.W.2d 816 (1989). Even if we were to adopt that reasoning and change the rules, we could not do so retroactively, so it would not change the result of this case. Additionally, we decline the State's invitation to prospectively change the rules.

Before we had speedy trial rules, an accused was often released on bond and remained free for a long period of time before trial was scheduled. The accused usually was pleased with such a system, but the public, the victim, and the victim's family were uncomfortable while the accused remained free for such an extended period. At other times, an accused might remain in jail for long periods of time without ever being convicted of a crime. A reform movement began. In 1968, the American Bar Association approved a draft of the *Standards Relating To Speedy Trial*. In 1971, this court created the Arkansas Criminal Code Revision Commission, and a part of its task was to implement standards relating to speedy trial. In 1972, the Supreme Court of the United States handed down *Barker* v. *Wingo*, 407 U.S. 514 (1972), which enunciated the constitutional criteria for determining an accused's right to a speedy trial.

In 1975, this court adopted the Criminal Code Revision Commission's recommendations as the Arkansas Rules of Criminal Procedure. Article VIII of those rules is entitled "Speedy Trial." The commentary to that article provides in part: "[T]he concern here is with how the interest of defendants and *the public* in prompt trial should be determined and protected." (Emphasis added.) The Commission studied the American Bar Association's standards. A part of that commentary provides:

> The principles underlying most of the standards in this report deal primarily with protection of the defendant, who otherwise would not be in a position to force a prompt trial. *The interest of the public in the prompt disposition of criminal cases, however, must also be recognized.*

> Speedy trial may be of concern to the defendant, as he may want to preserve the means of proving his defense, to avoid a long period of pretrial imprisonment or conditional release, and to avoid a long period of anxiety and public suspicion arising out of the accusation. From the point of view of the public, a speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant *during which time he may flee, commit other crimes, or intimidate witnesses.*

Wayne R. LaFave, Standards Relating to Speedy Trial commentary at 5-6 (Am. Bar Ass'n 1967) (emphasis added).

Similarly, we have written that one purpose of the speedy trial rule is to protect the accused, but that the rule is also to protect the victim of the crime and, perhaps above all, to serve the interests of the public. *See, e.g., Chandler v. State*, 284 Ark. 560, 683 S.W.2d 928 (1985). The concept of the prompt and speedy trial is based upon sound public policy.

The only meaningful way to ensure that the public policy is effectuated is to discharge an accused who is not promptly tried. This is the purpose of Rule 28.1 (c). At times, such as in this case, it is an unpleasant task to reverse and dismiss a conviction, but it is the only way prompt criminal trials are assured.

The dissenting opinion in *Asher v. State* criticizes our present rule because it does not require the accused to prove prejudice nor require him to assert his right to a speedy trial prior to the expiration of the time. Our Criminal Code Revision Commission recommended to this court, and this court created, the rule we now have instead of the standard of the dissenting opinion in order to prevent issues of byzantine complexity. The rules have worked relatively well, and we decline the invitation to change them.

Reversed and dismissed.

HAYS, GLAZE, and BROWN, JJ., dissent.

STEELE HAYS, Justice, dissenting. In this case, as in *Lewis v. State*, 307 Ark. 260, 819 S.W.2d 689 (1991), it was the

appellant's motion to sever that prevented appellant being tried within the time for speedy trial. In *Lewis*, we held that a delay attributable to a motion to sever was "good cause" as provided in Ark. R. Crim. P. 28.3(h). In *Williams* v. *State*, 275 Ark. 8, 627 S.W.2d 4 (1982), we found good cause for delay when counsel for the defendant moved to withdraw because of the defendant's lack of cooperation. In *Foxworth* v. *State*, 263 Ark. 549, 566 S.W.2d 151 (1978), we found good cause for delay when counsel for defendant withdrew after being assaulted by the defendant. In *Walker* v. *State*, 288 Ark. 52, 701 S.W.2d 372 (1986), the defendant asked for an omnibus hearing and then, fifty-five days later, waived a hearing. We wrote that if the request for an omnibus hearing had delayed the trial the delay would not have counted for purposes of speedy trial. In *Divanovich* v. *State*, 273 Ark. 117, 617 S.W.2d 345 (1981), a delay attributable to the defendant's motion alleging a conflict of interest by the prosecutor was good cause.

Turning to the case at bar, it seems evident that a defendant who demands a separate trial on each of eleven felony counts cannot complain on speedy trial grounds if that process requires more than ten months to complete. Between the time the appellant moved for severance and the conviction now before us, five separate trials were conducted, another was delayed because appellant wanted to change counsel on the eve of trial and one was delayed because a witness for the state was unavailable. Both are "good cause" delays. *See Divanovich* v. *State, supra* and *Roleson* v. *State*, 272 Ark. 346, 614 S.W.2d 656 (1981). It strikes me the state has moved with reasonable diligence to dispose of these cases in the face of the appellant's demand for eleven separate trials.

The majority maintains the eleven cases could have been set for trial over the ensuing ten months. That may be true, but conducting eleven trials at intervals of three to four weeks would have played havoc with the scheduling of literally hundreds of other cases and put an inordinate burden on the prosecutor, defense counsel and trial court by essentially requiring that their undivided attention be devoted to a single defendant over a span of ten months to the near exclusion of all other matters.

The result in this case demonstrates the dire need for a

reexamination of our rule on speedy trial. The rule obviously was drafted with no thought given to the problems created by a demand for severance of a multiplicity of charges. And even though the rule itself has no provision dealing with the situation presented by this case, the majority considers only the element of time in overturning the conviction and dismissing the charges. Arkansas is unique in this mechanical approach to speedy trial. The other states and the District of Columbia *uniformly* adopt the four criteria approved in *Barker* v. *Wingo*, 407 U.S. 514 (1972): the length of the delay, the reasons for the delay, whether the defendant asserted the right to speedy trial and whether the defendant was prejudiced by the delay. *See* 78 Georgetown Law Journal 853, at 984 - 988 (1990). It is notable that in the *Barker* case, to which the majority hearken, the Supreme Court unanimously rejected Barker's speedy trial argument, even though this trial came after sixteen continuances granted on motion of the state and more than five years after his arrest.

I suggest it is time this court took a more reasoned view of speedy trial.

GLAZE, J., joins in this dissent.

TOM GLAZE, Justice, dissenting. This appeal presents yet another case where this court has dismissed a defendant's conviction on speedy trial grounds when the defendant never requested a trial or a trial date be set. Here, Benjamin Weaver was arrested on December 5, 1989, and subsequently charged with twenty-one counts of aggravated robberies and thefts. On February 12, 1990, Weaver asked the twenty-one counts be severed, and the trial court granted his request, making it necessary for eleven separate trials to be scheduled. Rules 28.1(b) and 28.2(a) provide that Weaver had twelve months from his arrest, or until December 5, 1990 to be tried *unless* necessary delays occurred as authorized in Rule 28.3.

Although Weaver was represented by counsel and had until December 5, 1990 to demand a trial, he failed to do so. One can reasonably presume from these facts that, since he failed to request a trial date, he wanted no speedy trial. In my dissenting opinion in *State* v. *Tipton*, 300 Ark. 211, 779 S.W.2d 138 (1989), I made my views clear that I believe *Barker* v. *Wingo*, 407 U.S. 514 (1972) requires a defendant to make a timely request for a

trial to be set and to show the defendant's case has been prejudiced by any unnecessary delay before a defendant's right to a speedy trial is violated. *See also Asher* v. *State*, 300 Ark. 57, 776 S.W.2d 816 (1989) (Hickman, Hays and Glaze, JJ., dissenting); *Hicks* v. *State*, 305 Ark. 393, 808 S.W.2d 348 (1991) (Corbin, Hays and Glaze, JJ., dissenting).

In this case, Weaver requested no trial be set, and in fact, his motion to sever, which was granted, placed the trial court in the position of scheduling eleven trials in a twelve-month period. The trial court expressed its unwillingness to appoint the same attorney to try all eleven trials. The trial court's decision in this respect seems reasonable to me. Certainly, Weaver never objected. In any event, the state diligently pursued its case against Weaver by trying its first charges on November 8, 1990 — well within the initial twelve-month period calculated under Rule 28. Again, it was only after the twelve-month period expired that Weaver moved to dismiss the state's remaining charges against him.

Because Weaver's own severance motion caused the trial court's delay in trying eleven cases in twelve months and because he failed to make a timely request for a speedy trial or show he was prejudiced as a result of any delay, I believe the majority court's decision to dismiss is wrong. For the foregoing reasons and those expressed in earlier dissents cited hereinabove, I respectfully dissent.

HAYS, J., joins this dissent.

ROBERT L. BROWN, Justice, dissenting. The decision of the majority places an impossible burden on the state to try all charges against a multiply charged defendant within one year, after that defendant requests severance and separate trials. Here, there were eleven charges for aggravated robbery and theft necessitating eleven separate trials. Under the rationale of the majority, the state would be required to try all charges against a certain defendant within a year's time, no matter how great the number and irrespective of the fact that the defendant had moved for a severance.

I cannot go that far.[1] The result of such a strict interpretation of our criminal rules would be to seriously bog down a circuit court's docket due one person's crime spree. In Pulaski County, at least, there are several criminal divisions. In a more rural judicial district, the logistical problems in trying a multiply charged defendant are even more dramatic.

The truth of the matter is that Ark. R. Crim. P. 28 does not contemplate this contingency of multiple charges and a defendant's motion for severance. Yet, by moving to sever, the defendant in reality is asking for a continuance relating to the severed charges. To be sure, this places the defendant in a position of choosing between the prejudice associated in a single trial of several counts and a loss of his speedy trial rights. However, in such situations the defendant should voice an objection to the trial settings if they span more than a year's time. In other words, it is incongruous to permit a defendant to request first a severance of charges for trial and then allow that defendant to say nothing and move to dismiss the untried charges a year after incarceration.

This case is troubling because of the length of time that Weaver has remained in jail — some 2 1/2 years — awaiting the series of trials. When a severance has been granted at the defendant's request on multiple charges, care must be taken by the circuit court to assure that the resulting delays associated with the subsequent trials are appropriate. Stated differently, the mere request of a severance of charges does not give the state carte blanche to move with anything less than maximum speed to dispose of the remaining charges. But there is nothing before us in this case suggesting that the circuit court was remiss in moving the process along.

In sum, I am not prepared to take the absolute approach of the majority when the delay is due to a severance request by Weaver, no objection was made by Weaver to the cases being tried for a period of more than a year until the twelve months had passed, and our criminal rules do not contemplate multiple charges and a severance request.

HAYS and GLAZE, JJ., join.

---

[1] Though I joined the dissent in *Lewis v. State*, 307 Ark. 260, 819 S.W.2d 689 (1991), I view the sheer number of charges in the present case as distinguishable.