Michael Shane JOLLY  *v.*  STATE of Arkansas

CR 03-1217                                                      189 S.W.3d 40

Supreme Court of Arkansas
Opinion delivered June 24, 2004

[Rehearing denied September 9, 2004.*]

---

* DICKEY, C.J., and HANNAH, J., would grant rehearing.

*Joe Kelly Hardin*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. This appeal requires us to decide for the first time whether, under the Sixth Amendment, a criminal defendant's right to a speedy trial encompasses a right to a speedy sentencing. We conclude that it does, and therefore we reverse the trial court's order sentencing appellant Michael Jolly to twenty-four years in prison (of which twelve years were suspended).

Jolly was charged with rape on August 27, 1996, for having consensual sexual intercourse with a twelve-year-old girl. Jolly was nineteen years old at the time. The trial was originally set for August 19, 1997; however, on August 19, Jolly obtained a continuance and was appointed a new attorney. On October 27, 1997, Jolly entered a plea of guilty to the rape charge. At that time, the court ordered a presentence report and announced that the presentence hearing would be set when the report was received. The court also informed Jolly that he would be notified when the hearing was set, and that Jolly would remain on bond and stay out of jail until his attorney notified him of the presentence hearing. A letter from Judge Cole, dated January 13, 1998, informed the attorneys that Jolly's case was set for sentencing on January 20, 1998. The next docket entry, dated January 20, 1998, reflects that the matter was "cont'd to Feb. 2 @ 1:00 p.m."

Nothing further happened in the case until February 18, 2003, when the prosecuting attorney filed a "Verified Motion to Show Cause," wherein the prosecutor brought to Judge Cole's attention the fact that the judge had previously accepted Jolly's guilty plea and ordered a presentence report, but Jolly had not yet been sentenced on the guilty plea. That same day, the trial court, Judge Grisham Phillips presiding, entered a show-cause order, ordering Jolly to appear on March 3, 2003, to show cause why he should not be sentenced for the rape charge to which he had pled guilty on October 27, 1997. The order was returned for failure of service by the Saline County Sheriff. On June 26, 2003, the court issued another show-cause order, directing Jolly to appear in court for sentencing on July 14, 2003.

On August 1, 2003, the State filed its brief in support of sentencing, explaining that Jolly's case had first come to the newly-elected prosecutor's attention when he was reviewing old case files after he took office on January 1, 2003. In response, Jolly filed a motion to dismiss the State's request for sentencing, arguing that sentencing him would violate his rights to a speedy trial. The Saline County Circuit Court denied Jolly's motion to dismiss on August 7, 2003, finding that there had been no intentional delay or

wrongdoing on the part of the State, and that Jolly had not been prejudiced by the delay in sentencing. Following the trial court's denial of his motion to dismiss, Jolly filed a petition for writ of prohibition with this court, which we denied on August 11, 2003. On August 15, 2003, the trial court sentenced Jolly to 144 months with another 144 months suspended. Jolly filed a timely notice of appeal.

On appeal, Jolly argues that the trial court's decision to sentence him more than five years after he entered his guilty plea violated his right to a speedy trial under the Sixth Amendment to the United States Constitution; Ark. Const. art. 2, § 10; and Ark. R. Crim. P. 28.1. The Sixth Amendment, of course, guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" This constitutional guarantee has "universally been thought essential to protect at least three basic demands of criminal justice in the Anglo–American legal system[.]" *Smith v. Hooey*, 393 U.S. 374 (1960). Those three basic demands are to (1) prevent undue and oppressive incarceration prior to trial; (2) minimize anxiety and concern accompanying public accusation; and (3) limit the possibilities that long delay will impair the ability of an accused to defend himself. *Id.* (citing *United States v. Ewell*, 383 U.S. 116 (1966)).

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court noted that the "right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused." *Barker*, 407 U.S. at 519. The Court asserted that, in addition to the "general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Id.* Another difference between the constitutional right to a speedy trial and other constitutional rights afforded an accused "is that deprivation of the right may work to the accused's advantage." *Id.* at 521. The Court noted that delay is often used as a defense tactic, and as such, deprivation of the right to a speedy trial, "unlike the right to counsel or the right to be free from compelled self-incrimination, . . . does not *per se* prejudice the accused's ability to defend himself." *Id.*

■ Most importantly, however, the *Barker* court noted that the constitutional guarantee of a speedy trial is "a more vague concept than other procedural rights." *Id*. On this point, the Court wrote the following:

> It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

*Id*.; *see also Gardner v. State*, 252 Ark. 828, 481 S.W.2d 342 (1972) (what constitutes a speedy trial within the meaning of the constitutional guarantee "must necessarily depend on the circumstances of the particular case").

■ To this end, the Court adopted a "balancing test" to utilize in determining whether a defendant's speedy-trial rights had been violated. This test "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial," although it weighs "the conduct of both the prosecution and the defendant[.]" *Id*. at 529-30. However, the Court stated, a balancing test "necessarily compels courts to approach speedy-trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id*. at 530. Those four factors are the 1) length of delay, 2) reason for the delay, 3) defendant's assertion of his right, and 4) prejudice to the defendant. *See id*. The Court regarded "none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533. However, the Court emphasized that, "because we are dealing with a fundamental right of the accused, this [balancing] process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id*.

■ *Barker*, of course, speaks only in terms of a defendant's right to a speedy *trial*. However, many courts, both before and since that decision, have also considered a defendant's right to speedy *sentencing*. In *Pollard v. United States*, 352 U.S. 354 (1957),

the Court assumed, without deciding, that a defendant's sentence is "part of the trial for purposes of the Sixth Amendment." *Pollard*, 352 U.S. at 361. Since *Pollard*, all federal circuit courts of appeal that have addressed the issue have either treated the subject as established law or have perpetuated the Court's assumption in *Pollard*. *See United States v. Gibson*, 353 F.3d 21 (D.C. App. 2003); *United States v. Martinez*, 837 F.2d 861 (9th Cir. 1988); *Burkett v. Cunningham*, 826 F.2d 1208 (3d. Cir. 1987); *Perez v. Sullivan*, 793 F.2d 249 (10th Cir. 1986) ("generally agree[ing]" with those circuit courts of appeal that apply the *Barker* factors in evaluating delay-in-sentencing cases); *United States v. Campisi*, 583 F.2d 692 (3d Cir. 1978); *United States v. Reese*, 568 F.2d 1246 (6th Cir. 1977); *United States v. Campbell*, 531 F.2d 1333 (5th Cir. 1976); *United States v. Tortorello*, 391 F.2d 587 (2d Cir. 1968).[1]

▮ In addition to the foregoing federal decisions, there are at least seventeen state courts that have recognized that a defendant's speedy-trial rights encompass the right to a speedy sentence. *See Hurst v. State*, 516 So.2d 904, 905 (Ala. Crim. App. 1987); *Gonzales v. State*, 582 P.2d 630, 633 (Alaska 1978); *State v. Burkett*, 179 Ariz. 109, 876 P.2d 1144, 1149 (Ct. App. 1993); *Moody v. Corsentino*, 843 P.2d 1355, 1363 (Colo. 1993) (*en banc*); *State v. Wall*, 40 Conn. App. 643, 673 A.2d 530, 540 (1996); *State v. Cunningham*, 405 A.2d 796 (Del. 1979); *Moore v. State*, 263 Ga. 586, 436 S.E.2d 201, 202 (1993); *Trotter v. State*, 554 So.2d 313 (Miss. 1989); *State ex rel. McLellan v. Cavanaugh*, 127 N.H. 33, 498 A.2d 735, 740 (1985); *State v. Avery*, 95 N.C. App. 572, 383 S.E.2d 224, 225 (1989); *State v. Todisco*, 129 N.M. 310, 6 P.3d 1032 (2000); *People v. Harper*, 137 Misc.2d 357, 520 N.Y.S.2d 892 (1987); *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597, 599 (1980); *State v. Banks*, 720 P.2d 1380, 1385 (Utah 1986); *State v.*

---

[1] We note that the Eighth Circuit has not squarely decided the issue. While the dissent here cites the case of *Brooks v. United States*, 423 F.2d 1149 (8th Cir. 1979), that court merely found it "unnecessary . . . to make a decision at this time [on] whether an unreasonable delay in sentencing constitutes an infringement of a jurisdictional or constitutional right," because the seven-and-a-half month delay before sentencing in *Brooks* did not give rise to "any 'purposeful' or 'oppressive delay.' " *Brooks*, 423 F.2d at 1151. To the extent the dissent cites *Brooks* for the proposition that constitutional concerns may differ in a speedy-sentencing case, we might agree; however, we simply point out that the *Brooks* case is neither controlling nor particularly instructive here, because it fails to reach the Sixth Amendment issue we must decide. ·

*Dean*, 148 Vt. 510, 536 A.2d 909, 912 (1987); *State v. Ellis*, 76 Wash. App. 391, 884 P.2d 1360, 1362 (1994); and *State v. Allen*, 179 Wis.2d 67, 505 N.W.2d 801, 803 (1993).

■■ As have so many of our sister states that have been confronted with this same constitutional issue, we conclude that the right to a speedy sentence is encompassed within the Sixth Amendment right to a speedy trial.[2] We therefore turn to an application of the factors enunciated in *Barker v. Wingo, supra*, to determine whether Jolly was denied his right to a speedy sentencing in this case. The first factor is whether the delay between Jolly's guilty plea and sentencing is sufficiently long to trigger the necessity for further inquiry. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Many courts considering this question have found a delay far less than the five-plus years involved here to be "sufficiently long." *See Perez, supra* (fifteen months); *Juarez-Casares v. United States*, 496 F.2d 190 (5th cir. 1974) (thirty-one months); *United States v. James*, 459 F.2d 443 (5th Cir.), *cert. denied*, 409 U.S. 872 (1972) (three-year delay unreasonable, but no relief granted because no prejudice resulted). Here, the delay from Jolly's guilty plea to his sentencing was from October 27, 1997, until August 15, 2003, a difference of five years and almost ten months. The State concedes that this factor tips in Jolly's favor.

■■ Likewise, the second factor — the reason for the delay — weighs heavily in Jolly's favor. According to the State's brief in support of sentencing, the newly-elected prosecuting attorney was "reviewing old case files" and "discovered" that Jolly

---

[2] The dissent rejects our conclusions regarding the Sixth Amendment, and would instead find a violation of Jolly's due-process rights. However, Jolly never raised a due-process argument in his brief before this court. It is improper to address or consider such an argument, because arguments not made on appeal are considered waived. *See King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996). Further, although Jolly raised his due process issue in his motion to dismiss the State's request for sentencing, the trial court never explicitly ruled on it. This court has repeatedly held that a party's failure to obtain a ruling is a procedural bar to this court's consideration of the issue on appeal. *See Proctor v. State*, 349 Ark. 648, 79 S.W.3d 370 (2002); *Huddleston v. State*, 347 Ark. 226, 61 S.W.3d 163 (2001); *Alexander v. State*, 335 Ark. 131, 983 S.W.2d 110 (1998); *Jackson v. State*, 334 Ark. 406, 976 S.W.2d 370 (1998). This is true even of constitutional arguments. *See Huddleston, supra*. Therefore, it is highly inappropriate to base this decision on a due process argument.

had never been sentenced. Although neither malice nor deliberate attempt to avoid sentencing Jolly was shown, the Supreme Court has held that the fact that the delay is caused by mere negligence is no excuse. In *Doggett v. United States*, 505 U.S. 647 (1992), the Court wrote as follows:

> *Barker* made it clear that "different weights [are to be] assigned to different reasons" for delay. [Citation omitted.] Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness [citation omitted], and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low procedural priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest·in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

> To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, . . . [w]hen the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief.

*Doggett*, 505 U.S. at 657–58. In Jolly's case, as was true in *Doggett*, the State's negligence weighs heavily against it.

The third factor is Jolly's assertion of his right to a speedy sentencing. Here, the State argues that Jolly knew he had entered a guilty plea, and was required to affirmatively request that the trial court sentence him in order to demonstrate his entitlement to relief on this point. However, the State utterly fails to cite,

mention, or discuss this court's long-standing rule, which is ensconced in our Rules of Criminal Procedure, that the speedy-trial period "commences to run *without demand by the defendant.*" *See* Ark. R. Crim. P. 28.3(a) (emphasis added); *Burmingham v. State,* 346 Ark. 78, 57 S.W.3d 118 (2001). Further, this court has consistently and repeatedly held that a defendant is not required to bring himself to trial or "bang on the courthouse door" to preserve his right to a speedy trial; rather, the burden is on the courts and the prosecutors to see that trials are held in a timely fashion. *See Zangerl v. State,* 352 Ark. 278, 100 S.W.3d 695 (2003); *Nelson v. State,* 350 Ark. 311, 86 S.W.3d 909 (2002); *Jones v. State,* 329 Ark. 603, 951 S.W.2d 308 (1997). Clearly, this factor does not weigh so heavily against Jolly as the State would like.

This is not a case where the accused actively sought to delay the imposition of his sentence, *see United States v. Gibson,* 353 F.3d 21 (D.C. App. 2003), or absconded from the jurisdiction in order to avoid being sentenced. *See, e.g., Brown v. Donelly,* 258 F. Supp. 2d 178 (E.D.N.Y. 2003) (declining to find speedy-sentencing violation where accused "was completely responsible for the delay in sentencing because he absconded prior to sentencing and then falsely identified himself by using an alias). Here, Jolly testified that he was "looking over [his] back ever since [he entered his guilty plea], waiting for this to be over with." Although Jolly did not actively seek to be sentenced, this factor does not weigh against him, because he was not required to demand sentencing, and did nothing to actively avoid being sentenced. Further, this factor weighs heavily against the State, as it was aware — or should have been aware — of Jolly's whereabouts, as Jolly had been arrested six times between 1997 and 2003 by Saline County law enforcement officials on various misdemeanor charges. It is instructive here to repeat the Supreme Court's language in *Doggett,* wherein that Court wrote that the State's "persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice."

Finally, the fourth factor is the prejudice to Jolly, as the defendant. Courts have noted that this factor is to be analyzed somewhat differently in a speedy-sentencing situation, because the competing interests of the accused and of society are different than

those presented in a pre-trial delay situation. *See Perez v. Sullivan, supra.* In *State v. Todisco, supra,* the New Mexico Court of Appeals wrote the following:

> Traditionally, the right to a speedy trial protects against three types of prejudice: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility of impairment to the defense. *See Barker,* 407 U.S. at 532. However, as the Tenth Circuit explained in *Perez,* in a post-conviction situation, "a delay in sentencing involves considerations different from those related to pre-trial delay. The alteration of defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process." [*Perez*], 793 F.2d at 254. Most of the interests designed to be protected by the speedy trial guarantee "diminish or disappear altogether once there has been a conviction," and "the rights of society proportionately increase[.]" *Id.* at 256. Therefore, "the prejudice claimed by the defendant must be substantial and demonstrable." *Id.*

*Todisco,* 129 N.M. at 317-18, 6 P.3d at 1039-40.

Courts finding an accused's demonstration of prejudice to be lacking are generally confronted with an argument that the defendant has lost things such as: the opportunity to be treated in a juvenile facility, *see Todisco, supra;* the right to appeal, *see Perdue v. Commonwealth,* 82 S.W.3d 909 (Ky. 2002); the right to be sentenced to federal prison, rather than to state prison, *see Brooks v. United States, supra;* or the right to a parole hearing, *see United States v. Campisi, supra.*

However, in *Moore v. Arizona,* 414 U.S. 25 (1973), the United States Supreme Court held that a defendant may be prejudiced in numerous ways by a delay in bringing him to trial. The Court wrote the following:

> Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and his friends." *United States v. Marion,* 404 U.S. 307 (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent.

*Moore*, 414 U.S. at 26–27.

The Court further held in *Doggett, supra,* that a court's consideration of the prejudice prong "is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett,* 505 U.S. at 655. The Court continued as follows:

> *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove, because time's erosion of exculpatory evidence and testimony "can rarely be shown." 407 U.S., at 532. And though time can tilt the case against either side, *see id.,* at 521; [*United States v.*] *Loud Hawk,* [474 U.S. 302 (1986)], at 315, one cannot generally be sure which of them it has prejudiced more severely. *Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.* While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, *see Loud Hawk, supra,* at 315, *it is part of the mix of relevant facts, and its importance increases with the length of delay.*

*Id.* at 655–56 (emphasis added).

Under Ark. Code Ann. § 16-97-101(6) (Supp. 2003), "[a]fter a plea of guilty, the defendant, with the agreement of the prosecution and the consent of the court, may be sentenced by a jury impaneled for purposes of sentencing only." During this bifurcated sentencing procedure, the defendant is permitted to introduce "additional evidence relevant to sentencing[.]" § 16-97-101(2). Further, even when a defendant is sentenced by the court, rather than by a jury, the defendant has the right to "request[ ] to present evidence relevant to sentencing"; when the defendant makes such a request, the trial court "shall hear or receive such evidence and any rebuttal by the opposing party." Ark. Code Ann. § 16-97-102(1) (Supp. 2003). *See also* Ark. Code Ann. § 5-4-102 (Repl. 1997) (authorizing presentence report, if punishment is to be fixed by the court; presentence report should include "an analysis of the circumstances surrounding the commission of the offense, the defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, personal habits, and any other matters that the investigator deems relevant or the court directs to be included").

■ It is obvious that the defendant is allowed to present evidence relevant to his sentence. When a defendant's sentencing is delayed an unreasonable amount of time, as is the situation in the present case, it is apparent that the defendant's ability to gather and present such evidence may be impaired. Under *Doggett*, we presume that a defendant is prejudiced by such circumstances. Further, as even the dissent notes, "the pending imposition of punishment that loomed [over Jolly's head] for almost six years certainly would not be pleasant for anyone. There is no question that this negligence by the State interfered with Jolly's ability to live his life as he saw fit." Clearly, Jolly was prejudiced by the State's delay in sentencing him. The facts of this case demonstrate that Jolly has been prejudiced.[3] This prejudice, when considered along with the other three factors, compels a conclusion that Jolly's Sixth Amendment right to a speedy sentencing was violated by the State in this case.

■ We wish to make it plain that we have decided this case on the basis of the particularly egregious fact situation. As noted above, the determination of what constitutes a violation of one's right to a speedy-trial — or, in this case, a speedy sentence — "must necessarily depend on the circumstances of the particular case." *See Gardner*, 252 Ark. at 836. The State's almost six-year delay in this case is inexcusable, and we view our vacating of Jolly's sentence as an act akin to applying the exclusionary rule to suppress evidence when the State has violated a defendant's Fourth Amendment rights to be free from unreasonable searches and seizures. *See Hoay v. State*, 348 Ark. 80, 71 S.W.3d 573 (2002) (citing *United States v. Leon*, 468 U.S. 897 (1984), and stating that that the purpose of the exclusionary rule for unconstitutional searches is to deter police misconduct). Prosecutors must know that it is unreasonable and unconscionable to delay sentencing a defendant for

---

[3] In *Yelverton v. United States*, 197 F.3d 531 (D.C. App. 1999), the United States Court of Appeals for the District of Columbia Circuit noted in a footnote that "mere generalized anxiety is insufficient to establish prejudice, even when such anxiety is due to a pre-trial delay in excess of four years. . . . [A]bsent evidence of severe anxiety . . . , we are left with what amounts to rank speculation about Yelverton's general state of mind, and this is insufficient to establish a Sixth Amendment violation." *Yelverton*, 197 F.3d at 538, fn.9. Here, however, we have Jolly's own testimony about the effects of waiting for the State to sentence him. We are not required to speculate about his state of mind, and we are therefore able to determine that Jolly was prejudiced.

such an extended period of time. In a similar case involving a twelve-year delay in sentencing, a New York court wrote as follows:

> The delay . . . deprived the defendant of his right to be promptly sentenced and to thereafter resume his normal life. To impose punishment at this late date would serve no valid punitive, rehabilitative, or deterrent purpose. To impose even an unconditional discharge would conceal a significant, unjustifiable failure of the criminal justice system and would thus only encourage its future repetition. Imposition of any sentence under these circumstances would violate the defendant's constitutional rights to . . . speedy trial[.]

*People v. Harper*, 520 N.Y.S.2d at 902.

■■■ Because we reverse on the basis of Jolly's Sixth Amendment argument, we neither reach nor address his claims under the Arkansas Constitution and Ark. R. Crim. P. 28.1. In *Strunk v. United States*, 412 U.S. 434 (1983), the Supreme Court held that, "[i]n light of the policies which underlie the right to a speedy trial, dismissal must remain . . . the only possible remedy." When the issue is the denial of a defendant's right to a speedy sentencing, the proper remedy is to vacate the sentence and release the defendant from custody. *See Trotter v. State*, 554 So.2d 313 (Miss. 1989); *Juarez-Casares v. United States*, 496 F.2d 190 (5th Cir. 1974). Therefore, the judgment of the Saline County Circuit Court, sentencing Jolly to 144 months' imprisonment with another 144 months suspended, is vacated.

DICKEY, C.J., and HANNAH, J., dissent.

JIM HANNAH, Justice, dissenting. I disagree that the right to a speedy trial includes within it the right to speedy sentencing. The right to a speedy trial is provided in the Sixth Amendment to the United States Constitution, which states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence.

Arkansas Constitution, article 2, section 10, provides in pertinent part: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial. . . ."

The United States Supreme Court has stated that the purpose behind the Sixth Amendment is to protect against "unreasonable delay between formal accusation and trial," because the delay causes "more than one sort of harm, including 'oppressive pretrial incarceration', 'anxiety and concern of the accused', and 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exclupatory evidence'." *Doggett v. United States*, 505 U.S. 647, 654 (1992) (quoting in part, *Barker v. Wingo*, 407 U.S. 514 (1972)). None of these concerns are present in a delay in sentencing. The Eighth Circuit Court of Appeals in *Brooks v. United States*, 423 F.2d 1149 (8th Cir. 1971) (*cert. denied* 400 U.S. 872 (1971), aptly stated:

> Furthermore, the sensitive concerns which surround the necessity of a speedy trial on the merits of a case generally are not applicable when the delay is between conviction and sentencing. There exists here no concern over "oppressive incarceration" before trial, "anxiety" over public accusation before trial, or any "impairment" over the petitioner's ability to defend himself.

*Brooks*, 423 F.2d at 1152-53. In discussing the Sixth Amendment, as well as the Louisiana State constitutional provision on speedy trial, the Supreme Court of Louisiana stated that "both clauses are properly construed as referring to the adversary hearing that determines guilt or innocence." *State v. Johnston*, 363 So.2d 458, 460 (La. 1978). "The right to a speedy trial does not include the time after the defendant has been found guilty and before he is sentenced." *State v. Jameson*, 224 Neb. 38, 395 N.W.2d 744 (1986). Our own law is in accord. The fundamental purpose behind the right to a speedy trial is to

> "expedite adjudications so that none could fairly say that the right to an acquittal was being stifled because those charged with official duties preferred to procrastinate, meanwhile keeping the accused under a cloud — a result as severe in some cases as a conviction would be in others."

*Maxwell v. State*, 216 Ark. 393, 398, 225 S.W.2d 687 (1950). More than forty years later, this court stated:

> Similarly, we have written that one purpose of the speedy trial rule is to protect the accused, but that the rule is also to protect the

> victim of the crime and, perhaps above all, to serve the interests of the public. *See, e.g., Chandler v. State*, 284 Ark. 560, 683 S.W.2d 928 (1985). The concept of the prompt and speedy trial is based upon sound public policy.

*Weaver v. State*, 313 Ark. 55, 59, 852 S.W.2d 130 (1993).

The confusion that has arisen over identifying the constitutional rights implicated by a delay in sentencing arises from *Pollard v. United States*, 352 U.S. 354 (1957). *Pollard* remains the only United States Supreme Court case touching on the issue of delay in sentencing. However, the issue was not fully developed in *Pollard* because of the facts in that case. Pollard pled guilty on September 8, 1952, and the federal district court deferred imposition of sentence pending pre-sentence investigation. On October 3, 1952, Pollard appeared for sentencing. However, even though the court discussed Pollard's case with Pollard, his sentence of probation was not imposed until after Pollard was no longer in the courtroom. Pollard was told of the sentence of probation a short time later when he was released from state prison on a separate state conviction. He submitted to federal probation for some time, but in 1954, he was arrested on a parole violation and appeared again in federal court. At that time, the federal district court sentenced him "in the first instance . . . ." *Pollard*, 352 U.S. at 357. Pollard was then sentenced to two years in the federal penitentiary. Pollard argued double jeopardy before the United States Supreme Court, as well as the following:

> The imposition of sentence in September 1954 in the circumstances under which it took place constituted a serious departure from proper standards of criminal law administration and violated his rights to a speedy trial under the Sixth Amendment and to due process under the Fifth Amendment.

*Pollard*, 352 U.S. at 359. We thus see that, aside from double jeopardy, Pollard made three arguments of why the second sentence was improper:

1. Departure from standards of criminal administration;

2. Violation of the right to a speedy trial; and

3. Violation of due process rights.

The court in *Pollard* held that there was no double jeopardy violation, and then found, assuming "arguendo that sentence is part of the trial

for purposes of the Sixth Amendment," that there was not such a delay as would implicate the Sixth Amendment. *Pollard*, 352 U.S. at 361. Thus, it is clear that there is no holding in *Pollard* on the application of the Sixth Amendment to a delay in sentencing: rather, the court is entertaining the idea only for the sake of showing that even if the Sixth Amendment did apply, Pollard would not prevail. Because the Court assumed that the Sixth Amendment applied, there was no discussion of the application of speedy trial to sentencing, and the case therefore provides no precedent on the question of whether there is a right to speedy sentencing under the Sixth Amendment. The right to a speedy trial does not apply to a delay in sentencing because the right to a speedy trial assures a timely trial resulting in either conviction or acquittal.

The United States Supreme Court in *Pollard* stated, "Whether a delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends on the circumstances." *Pollard*, 352 U.S. at 361. As authority for this proposition, the Court cited to *Beavers v. Haubert*, 198 U.S. 77 (1905), and *Frankel v. Woodrough*, 7 F.2d 796 (8th Cir. 1925). Both cases discuss the attempt to bring a criminal defendant to trial rather than sentencing. *Johnston, supra*. Any remedy Jolly is due does not arise from the Sixth Amendment. "We believe that whatever right a defendant has to be sentenced in a timely fashion does not derive from the constitutional rights to be tried expeditiously." *Walker v. Commonwealth*, 4 Va. App. 286, 356 S.E.2d 853 (1987).

### Criminal Standards

On the issue of criminal standards and due process, the *Pollard* Court stated, "[w]e think that these issues are too far afield from the questions that petitioner raised in the courts below and in his petition for certiorari for them properly to be before us." *Pollard*, 352 U.S. at 363. Thus, *Pollard* provides no insight into either criminal standards or due process.

However, in Arkansas, the standards of criminal administration require that sentence be imposed within thirty days. Ark. R. Crim. P. 33.2 (2004). Yet, this rule is not mandatory. *Hogan v. State*, 289 Ark. 402, 712 S.W.2d 295 (1986). The violation of this rule will not result in discharge of the convicted criminal. *Hoke v. State*, 270 Ark. 134, 603 S.W.2d 412 (1980). Whatever the remedy for a violation of Rule 33.2 may be, it is not the discharge being sought by Jolly. Therefore, we need discuss this issue no further.

*Due Process*

If Jolly was injured, it was to his liberty interest arising under due process. Each of us has a liberty interest to be free of undue interference from the State. *See, e.g., Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002).

Jolly may not complain that he was charged, convicted, and sentenced on the rape charges. He pled guilty and was expecting to be sentenced. Had the circuit court completed Jolly's prosecution and imposed sentence within a reasonable time, this case would not be before this court. The failure to sentence Jolly in a timely manner, interferes with his life and his ability to develop a career, plan for the future, and otherwise exercise the freedom inherent in liberty. That constitutes a violation of his liberty interest.

The events show negligence on the part of the prosecutor and the circuit court, but nothing more than negligence. There is no evidence that anyone intentionally blocked sentencing. Jolly pled guilty to rape on October 27, 1997. The plea was accepted, and the circuit court ordered a pre-sentence report. Sentencing was set for January 20, 1998, but no hearing was held on that date. Apparently the matter fell off the docket, and the prosecuting attorney's tickler system. It was not until February 18, 2003, that a newly elected prosecuting attorney filed a motion to obtain sentencing. Various motions were heard, and Jolly was finally sentenced on August 15, 2003.

Jolly pled guilty to a heinous crime: rape of a twelve-year-old girl. There is no question that the State has a compelling interest in protecting children and society from such despicable acts. There is no question that the State was acting properly in seeking the conviction. The problem is with the State's conduct after the conviction.

In the five years and nine months that passed, Jolly worked, and he had two children. He claims that he has been "looking over my back ever since." It does not appear that Jolly was living an exemplary life. He was arrested six times in that time period as well. However, he never left the community and was always available for service of process and arrest.

Had Jolly been timely sentenced, he would have been in prison during these five years and nine months and the day when he would be released would have been five years and nine months closer. The pending imposition of punishment that loomed for

almost six years certainly would not be pleasant for anyone. There is no question that this negligence by the State interfered with Jolly's ability to live his life as he saw fit. That is the injury.

The State was under an obligation to sentence Jolly within a reasonable time after his conviction. Five years and nine months is not a reasonable time. The State failed in its duty to timely sentence Jolly. "A defendant is not required to bring himself to trial or 'bang on the courthouse door' to preserve his right to a speedy trial; the burden is on the courts and the prosecutors to see that trials are held in a timely fashion." *Zangerl v. State*, 352 Ark. 278, 100 S.W.3d 695 (2003). I believe that likewise where the State chooses to convict a person and deprive the person of liberty, due process requires that sentence be imposed within a reasonable time and without a demand by the convicted defendant that the court do its duty. An ordered society requires no less.

> The Fourteenth Amendment provides in relevant part that "[No state shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. 14 § 1. This language has been interpreted over the years to have both a procedural and substantive component. The substantive component of the due process clause protects "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).

Linder, 348 Ark. at 342. The United States Supreme Court stated on this same subject:

> While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. *Slaughter-House Cases*, 16 Wall. 36; *Butchers' Union Co. v. Crescent City Co.*, 111 U.S. 746; *Yick Wo v. Hopkins*, 118 U.S. 356; *Minnesota v. Barber*, 136 U.S. 313; *Allgeyer v. Louisiana*, 165 U.S. 578; *Lochner v. New York*, 198 U.S. 45;

*Twining v. New Jersey,* 211 U.S. 78; *Chicago, Burlington & Quincy R.R. Co. v. McGuire,* 219 U.S. 549; *Truax v. Raich,* 239 U.S. 33; *Adams v. Tanner,* 244 U.S. 590; *New York Life Ins. Co. v. Dodge,* 246 U.S. 357; *Truax v. Corrigan,* 257 U.S. 312; *Adkins v. Children's Hospital,* 261 U.S. 525; *Wyeth v. Cambridge Board of Health,* 200 Mass. 474.

*Meyer v. Nebraska,* 262 U.S. 390, 399 (1923). A criminal defendant's liberty interest is violated when a court fails to impose sentence within a reasonable time.

## Administration of Justice

Not only did Jolly suffer an injury by the State's negligence, but the credibility and integrity of the courts suffered injury as well. By the time Jolly was sentenced for his crime, his victim was about to graduate from high school. She was in elementary school when the crime was committed. The State has a duty to see that justice is timely completed to allow victims to get on with life and to retain the confidence of the public in the judicial system. Letting cases fall through the cracks so that rapists are not sentence for almost six years does not instill confidence in the judicial system. It is also doubtless that the attention given this case in the media was hardly comforting to the victim who is now an adult. In other contexts we have recognized the very real need for upholding public confidence in the majesty of the law and in the integrity of the judicial system. *McCullough v. State,* 353 Ark. 362, 107 S.W.3d 166 (2003). We must do so here; however, I do not believe that we must reverse and dismiss this case. We may affirm the trial court because the correct result was reached even though the wrong reasoning was used to reach that result. The majority concludes that because Jolly never raised a due process argument before this court, it is improper for this court to consider such an argument. Jolly made no argument whatever regarding due process, either before this court, or in the trial court below. Therefore, there is no argument on due process at issue in this case. No one need make the argument that due process supports the trial court's decision for this court to rely upon due process because this court would be affirming the trial court's decision. This court may rely upon the due process analysis to affirm the conviction because the trial court reached the correct result and only erred in setting out its analysis. In other words, the trial court reached the correct result but for the wrong reason. We have often held that we will not reverse a trial judge who uses the wrong reason but reaches the right result.

*Harris v. State*, 339 Ark. 35, 2 S.W.3d 768 (1999). Therefore, whether Jolly raised the issue of due process is wholly irrelevant to the analysis. It also seems unlikely that Jolly would have raised an issue to assist in assuring that he was sentenced to prison.

I believe that the trial court was correct in sentencing Jolly. However, given the failure to timely impose sentence, I would reduce the twelve year prison term by five years nine months plus time served. Where the circuit court's error has nothing to do with culpability, and relates only to punishment, we may correct the error in lieu of reversing and remanding the case. *Hudgens v. State*, 324 Ark. 169, 919 S.W.2d 939 (1996).

Based on the above discussion, I respectfully dissent.

DICKEY, C.J., joins.